**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CASEY BASTIAN,

        Defendant.

No. 08-CR-1327-LRR

**SENTENCING
MEMORANDUM**

---

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **SENTENCING FRAMEWORK** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

IV.   **EVIDENTIARY RULES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *A.*     *Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *B.*     *Government Exhibits 2, 3 & 4* . . . . . . . . . . . . . . . . . . . . . . . . **7**

V.     **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     *A.*     *Defendant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     *B.*     *A.V.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     *C.*     *Child Pornography.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
     *D.*     *Defendant's Hard Drive.* . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     *E.*     *Defendant's Shared File Folder* . . . . . . . . . . . . . . . . . . . . . **11**

VI.   **ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

VII.  **PRE-DEPARTURE ADJUSTED OFFENSE LEVEL** . . . . . . . . . . . . . . **13**
     *A.*     *Offense Conduct for Count 2: Receipt of Child Pornography* . . . . . **13**
          *1.*    *Distribution for receipt of a thing of value* . . . . . . . . . . . . . **13**
             *a.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
             *b.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
          *2.*    *Pattern of activity involving sexual abuse or exploitation of
               a minor* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
             *a.*    *Pattern of activity* . . . . . . . . . . . . . . . . . . . . . . **17**
             *b.*    *Simultaneous application with §4B1.5* . . . . . . . . . . **18**

     *c.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
   **3.**  **Use of a computer** . . . . . . . . . . . . . . . . . . . . . . . . **19**
     *a.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
     *b.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
   **4.**  **Use of 600 or more images** . . . . . . . . . . . . . . . . . . . **21**
     *a.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
     *b.*  *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
 **B.**  **Acceptance of Responsibility** . . . . . . . . . . . . . . . . . . . . . **22**
   **1.**  **Objection** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
   **2.**  **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
 **C.**  **Enhancement Under §4B1.5(b)(1)** . . . . . . . . . . . . . . . . . . **25**
   **1.**  **Pattern of activity involving prohibited sexual conduct** . . . . . **25**
   **2.**  **Cumulative to §2G2.2(b)(5)** . . . . . . . . . . . . . . . . . . . **29**
   **3.**  **Application** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

**VIII.** **CRIMINAL HISTORY CATEGORY** . . . . . . . . . . . . . . . . . . . . . . . **31**
 **A.**  **Objection** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**
   **1.**  **Comparison of punishments** . . . . . . . . . . . . . . . . . . . **32**
   **2.**  **Perceived seriousness of the offense** . . . . . . . . . . . . . . **33**
   **3.**  **Elements of the offense** . . . . . . . . . . . . . . . . . . . . . . **33**
   **4.**  **Level of culpability** . . . . . . . . . . . . . . . . . . . . . . . . **34**
   **5.**  **Likelihood of recidivism** . . . . . . . . . . . . . . . . . . . . . **34**
 **B.**  **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**IX.** **PRE-DEPARTURE ADVISORY SENTENCING GUIDELINES**
   **RANGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**X.** **UPWARD DEPARTURE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**XI.** **FACTORS IN 18 U.S.C. § 3553(a)** . . . . . . . . . . . . . . . . . . . . . . **37**

**XII.** **DISPOSITION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **41**

## I.  INTRODUCTION

The matter before the court is the sentencing of Defendant Casey Bastian.

## II.  RELEVANT PRIOR PROCEEDINGS

On October 22, 2008, a grand jury returned a three-count indictment ("Indictment") (docket no. 1) against Defendant.  Count 1 charges Defendant with Sexual Exploitation of

a Child, in violation of 18 U.S.C. § 2251(a) and (e).[1]  Count 2 charges Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).[2] Count 3 charges Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).[3]

---

[1] Section 2251(a) provides, in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in [. . .] any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce[.]

[2] Section 2252A(a)(2)(A) provides, in relevant part:

> Any person who [. . .] knowingly receives or distributes [. . .] any child pornograpny that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer [. . .] shall be punished as provided in subsection (b).

[3] Section 2252A(a)(5)(B) provides, in relevant part:

> Any person who [. . .] knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interestate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer [. . .] shall be punished as provided in subsection (b).

On December 11, 2008, Defendant pled guilty to Counts 1 and 2 of the Indictment before a United States Magistrate Judge pursuant to a plea agreement ("Plea Agreement") (docket no. 25-2). On the same date, the Magistrate Judge filed a Report and Recommendation (docket no. 26) in which he recommended that the undersigned accept Defendant's guilty plea. On December 31, 2008, the undersigned accepted Defendant's guilty plea.

On January 12, 2009, Defendant filed a Pro Se Motion (docket no. 28). In the Pro Se Motion, Defendant asked the court to appoint him a new attorney and allow him "to rescind [his] plea." Pro Se Motion at 5. On January 28, 2009, the Magistrate Judge entered an Order (docket no. 33) that granted Defendant's request for a new attorney and gave Defendant permission to have his newly appointed attorney file a motion to withdraw his guilty plea.

On February 17, 2009, Defendant filed a motion to withdraw his guilty plea ("Motion to Withdraw") (docket no. 38). On March 24, 2009, the Magistrate Judge issued a second Report and Recommendation ("Second Report and Recommendation") (docket no. 50-2) in which he recommended that the undersigned deny the Motion to Withdraw. On May 6, 2009, the undersigned adopted the Second Report and Recommendation and denied the Motion to Withdraw.

On April 6, 2009, the United States Probation Office ("USPO") released a draft of Defendant's Presentence Investigation Report ("PSIR"). Both parties lodged objections to the PSIR. On May 13, 2009, the USPO released a revised PSIR.

On June 4, 2009, the government filed its Sentencing Memorandum ("Gov't. Sent. Mem.") (docket no. 65). That same date, Defendant filed his Sentencing Memorandum ("Def. Sent. Mem.") (docket no. 66). On June 30, 2009, the court notified Defendant that it might depart or vary upward from his advisory Sentencing Guidelines range. Notice (docket no. 68), at 1. On July 1, 2009, the government filed a Supplemental Sentencing

Memorandum (docket no. 69).

On July 6, 2009, the court commenced Defendant's sentencing hearing ("Hearing"). Assistant United States Attorney Mark A. Tremmel represented the government. Attorney Christopher Cooklin represented Defendant, who was personally present. At the Hearing, the court received evidence, heard argument and listened to Defendant's allocution. Because of the complexity of the issues presented in this sentencing, the court reserved ruling pending the instant written sentencing memorandum. The court advised the parties it would take the sentencing issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

All contested issues in Defendant's sentencing are now fully submitted and ready for decision. On September 1, 2009, at 3:00 p.m., the court shall reconvene the Hearing and impose sentence.

### III.  SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)); *see, e.g.*, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume

that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *see also United States v. Feemster*, No. 06-2059, 2009 WL 2003970, *7 (8th Cir. July 13, 2009) (en banc) ("'[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

## IV. EVIDENTIARY RULES

### A. Generally

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR, as well as the testimony and other evidence the parties introduced at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant's offenses of conviction. In calculating Defendant's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845,

850 (8th Cir. 2008); *United States v. Bradford*, 499 F.3d 910, 922 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1446 (2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005).

## B. Government Exhibits 2, 3 & 4

The court overrules Defendant's objection to the admission of Government Exhibits 2, 3 and 4. Each exhibit contains an interview of a different minor female, A.W., M.W. and B.R., respectively. Child welfare professionals from St. Luke's Child Protection Center in Cedar Rapids, Iowa, conducted the interviews. In the interviews, all three girls allege that Defendant sexually abused them.

Defendant argues that Exhibits 2, 3 and 4 contain inadmissible hearsay and that the court should not consider them. Defendant argues the admission of Government Exhibits 2, 3 and 4 would violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Defendant is incorrect. "The Eighth Circuit Court of Appeals has repeatedly held—before and after *Crawford* [*v. Washington*, 541 U.S. 36 (2004)]—that the Confrontation Clause does not apply at sentencing." *United States v. Bentley*, 492 F. Supp. 2d 1050, 1055 (N.D. Iowa 2007) (Reade, C.J.), *aff'd*, 561 F.3d 803 (8th Cir. 2009), *petition for cert. filed*, (U.S. June 22, 2009) (No. 07-2533). "'Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.'" *United States v. Schlosser*, 558 F.3d 736, 740 (8th Cir. 2009) (quoting *United States v. Hansel*, 524 F.3d 841, 847 (8th Cir. 2008)).

The court finds that the testimony contained in Exhibits 2, 3 and 4 bears sufficient indicia of reliability. All three videos contain interviews conducted by child welfare professionals. In each interview, the child welfare workers tested the girls on their ability to understand and tell the truth. Each girl showed that she was able to distinguish between truth and dishonesty. The interviewers were careful to ask open-ended questions and

refrained from leading the girls to a certain answer. The interviewers also asked the girls the same question in various forms to test the consistency of their responses. The girls provided consistent responses to their questions. For instance, A.W. was consistently clear about what she did and did not remember about Defendant's sexual abuse of her. Rather than guess or approximate the date that Defendant had abused her, A.W. simply said that she was unsure of the timing of Defendant's abuse.

After viewing the videos and observing the demeanor of A.W., M.W. and B.R., the court has no doubt that they told child protection workers the truth and that Defendant sexually abused them. Each girl provided highly detailed information about the sexual misconduct and sexual assaults that Defendant performed on them. It would be difficult for such young girls to fabricate such specific allegations of sexual abuse.

For instance, A.W. recalled that Defendant had licked her crotch. M.W., who was four years of age at the time of her interview, demonstrated how Defendant had sexually abused her by gyrating her hips. Similarly, B.R., who was twelve years of age at the time of her interview, used a pen to show a child welfare worker how Defendant had masturbated and she mimicked the moaning sounds Defendant had made when he abused her.

The court also notes that the details M.W. and B.R. recounted contain remarkable similarities. For instance, M.W. and B.R.'s accounts indicate that Defendant often abused them by positioning them in a certain manner on his mother's kitchen table or by pulling a blanket over them in his mother's living room. M.W. and B.R. also told their interviewers that Defendant made them promise that they would not report the abuse to his mother. For a four-year-old and twelve-year old girl to coincidentally lie about (or conspire to lie about) these details is next to impossible.

Defendant argues that the court should not consider the statements in the videos because the charges that were brought against Defendant as a result of the allegations made

by these girls were either dismissed or labeled unfounded.[4]  The court finds that the fact these charges were dismissed and/or labeled unfounded does not diminish the credibility of the statements made in the videos.

Accordingly, the court shall admit the statements that A.W., M.W. and B.R. made in Exhibits 2, 3 and 4.  The court shall consider these statements in determining Defendant's sentence.

## V.  FACTS

The court draws the following facts from the uncontested portions of the PSIR, the Plea Agreement and the evidence presented at the Hearing:[5]

### A.  Defendant

Defendant is 28 years old.  From 1999 to 2003, Defendant resided with his girlfriend, Elissa Miller, in Dubuque, Iowa.  Two children were born out of this relationship. In July of 2008, Defendant began dating Stacey Lucas.  One child was born out of this relationship.

### B.  A.V.

At some point in 2001, Defendant hired a minor female, A.V., to babysit his children.  Defendant and A.V. engaged in sexual intercourse for the first time when A.V. was around thirteen years old and in the eighth grade.  Ms. Miller testified that, on one occasion, she observed Defendant and A.V. having sexual intercourse on the couch in their living room.  To the extent it is relevant, the court credits this testimony.

---

[4] The court notes Special Agent Edward Hurkett testified that at least two of the charges were dismissed, in part, because the minor victims, A.W. and B.R., were reluctant to speak further about the abuse.  The court also notes that, although B.R.'s allegations of child abuse were initially labelled "unfounded" by Child Protective Services, the agency later reversed those charges to "founded."

[5] The court makes additional factual findings in conjunction with its conclusions of law.

A.V. stopped babysitting Defendant's children before she turned sixteen. When A.V. turned seventeen, Defendant took photographs of her genitals and pubic area. Defendant took these photographs after he and A.V. had engaged in sexual activity.

On one occasion while Ms. Lucas was using Defendant's computer, she discovered the images of A.V.'s genitals and pubic area. Ms. Lucas also discovered an image of A.V. performing oral sex on Defendant and an image of A.V. with ejaculate on her body. When Ms. Lucas asked Defendant to remove the images of A.V. from his computer, he became defensive.

## C.  Child Pornography

On or about June 20, 2007, Defendant knowingly received and attempted to receive images of child pornography by downloading certain images of child pornography from the Internet to his personal computer. These images had been transported in interstate commerce. Defendant's computer had been manufactured outside the State of Iowa and had been transported and shipped in interstate commerce.

On March 3, 2008, FBI investigators in Minneapolis, Minnesota downloaded twenty-one image files from Defendant's computer through LimeWire. LimeWire is a peer-to-peer file sharing software. Some of the downloaded images contained child pornography. One of the images of child pornography depicted an erect penis penetrating a prepubescent female's vagina. Later, law enforcement located this image in a shared folder on Defendant's personal computer.

On March 12, 2008, FBI investigators in Marion, Illinois, downloaded two video files from Defendant's computer through LimeWire. Both video files depicted adult males sexually penetrating children. The first file depicted two thirteen-year-old prepubescent females engaged in sexual intercourse with an adult male. The second file contained images of an eleven-year-old female engaged in sexual intercourse with an adult male. Investigators downloaded these files from the Internet Protocol ("IP") addresses used at

Defendant's residence in Dubuque, Iowa.

### D.  Defendant's Hard Drive

On April 16, 2008, investigators executed a search warrant on Defendant's residence in Dubuque, Iowa, and seized Defendant's Sony laptop computer.  Investigators analyzed the laptop's hard drive and located 68 video files and between 100 and 150 image files of child pornography.  Investigators determined that many of these files had been downloaded from the Internet through Defendant's computer.

The content of the image files varied.  Some of the images showed A.V.'s vaginal area, genitals, breasts and face.  Some images depicted prepubescent children engaged in oral sex with adults.  Many videos contained pornographic depictions of prepubescent minors and minors under the age of twelve.  Some video files depicted adult males penetrating the genitals of prepubescent minors (including adult males penetrating a minor's vagina with adult penises, fingers and other objects).

The length of the videos also varied.  Several were only one minute long.  One was forty-five minutes long.  One video file that was 5.46 minutes in length depicted an adult male penetrating a toddler.  Three videos, with running times of 16.59 minutes, 15.32 minutes and 3.18 minutes, depicted a minor victim forced to perform sex acts while tied up and bound.

### E.  Defendant's Shared File Folder

Investigators discovered that Defendant had a shared file folder on his laptop.  The shared file folder contained more than 5,000 images, 100 to 150 of which contained depictions of child pornography.  These images depicted pornographic images of known and unknown child victims from a series of depictions widely distributed on the Internet, including a series entitled "Vicky."  PSIR at ¶ 20.  One fifteen-minute video from the Vicky series depicted a blindfolded prepubescent female with bound hands and feet.  The Vicky series depicted the insertion of objects into the prepubescent female's vagina.  Some

of these images were identical to images investigators had downloaded from Defendant's computer in March of 2008. Laboratory analysis revealed that LimeWire had been installed on Defendant's computer.

## VI. ISSUES

There are seven contested issues in this sentencing: whether the court should (1) apply a five-level upward adjustment pursuant to USSG §2G2.2(b)(3)(B); (2) apply both (a) a five-level upward adjustment for distribution for the receipt of thing of value under USSG §2G2.2(b)(3)(B) and (b) a two-level upward adjustment for use of a computer under USSG §2G2.2(b)(6); (3) apply a five-level upward adjustment for the number of images under USSG §2G2.2(b)(7)(D)[6]; (4) assess upward adjustments for a "pattern of activity" under both USSG §2G2.2(b)(5) and USSG §4B1.5(b)(1); (5) grant Defendant a reduction for acceptance of responsibility pursuant to USSG §3E1.1(a); (6) assess one criminal history point for Defendant's conviction for Violation of an Order of Protection; and (7) depart upward under the Commentary to §2G2.2 because Defendant possessed video files of child pornography that were substantially more than five minutes in length.

The government bears the burden of proof on all issues except the fifth issue, acceptance of responsibility. *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements). Defendant bears the burden of proof on the fifth issue. *See United States v. Stoltenberg*, 309 F.3d 499, 500 (8th Cir. 2002) ("A defendant has the burden to establish his entitlement to an acceptance-of-responsibility reduction."). The court discusses each of

---

[6] In the parties' sentencing memoranda, the parties incorrectly refer to the section at issue as USSG §3B1.1(c). Section 3B1.1(c) refers to a two-level upward adjustment for a defendant with an aggravating role in the criminal activity. This provision does not apply in the instant action. Rather, the Guidelines provision at issue and discussed in the parties' briefing is §2G2.2(b)(7), which provides for varying upward adjustments depending on the number of images of child pornography at issue.

these issues below.

## VII.   PRE-DEPARTURE ADJUSTED OFFENSE LEVEL

The parties agree that Counts 1 and 2 should be grouped together pursuant to USSG §3D1.2(b).  The parties also agree that, because Defendant has a higher offense level under Count 2, the court may use Defendant's adjusted offense level for Count 2 to arrive at the offense level for both Counts 1 and 2.  USSG §3D1.3(a).

### A.   Offense Conduct for Count 2: Receipt of Child Pornography

The parties agree Defendant's base offense level for Count 2 is **22**.  *See* USSG §2G2.2 & App'x A (Statutory Index).  The parties also agree Defendant is subject to (1) a **two-level** upward adjustment pursuant to USSG §2G2.2(b)(2) because the child pornography in his possession contained images of a prepubescent minor or a minor who had not attained the age of twelve; and (2) a **four-level** upward adjustment pursuant to USSG §2G2.2(b)(4) because Defendant's offense conduct involved material that portrays sadistic or masochistic conduct.  This brings Defendant's offense level to **28**.

### 1.   Distribution for receipt of a thing of value

The parties dispute whether the court should apply the upward adjustment in USSG §2G2.2(b)(3)(B).  This section provides for a five-level upward adjustment if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain[.]"  USSG §2G2.2(b)(3)(B).  "Distribution[7] for the receipt, or

---

[7] "Distribution" is defined as:

> any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor.  Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

USSG §2G2.2 cmt. (n.1).

expectation of receipt, of a thing of value, but not for pecuniary gain" means:

> any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

*Id.* at cmt. (n.1).

### a.    *Analysis*

The government argues that this enhancement should apply because Defendant used LimeWire to download child pornography and stored child pornography in a shared file on his computer so that other LimeWire users could access it. The Eighth Circuit Court of Appeals has held that a defendant's use of Kazaa, a peer-to-peer file sharing program similar to LimeWire, may warrant the enhancement in USSG §2G2.2(b)(3)(B). The Eighth Circuit Court of Appeals reasoned:

> We now hold that [the] five-level enhancement for the distribution of child pornography "for the receipt, or the expectation of receipt, of a thing of value, but not for pecuniary gain" applies to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network, as these networks exist—as the name "file-sharing" suggests—for users to share, swap, barter, or trade files between one another.

*United States v. Griffin*, 482 F.3d 1008, 1013 (8th Cir. 2007).

Defendant argues this enhancement should not apply because his case can be distinguished from *Griffin*. Defendant claims that, unlike the defendant in *Griffin*, he was an unsophisticated user of LimeWire and was unaware that LimeWire enabled his shared files to be accessed by other LimeWire users. Defendant provides no evidence to support his contention that he was unaware of LimeWire's file-sharing function.

Defendant used LimeWire to download child pornography and stored child pornography in his shared folder on his computer. On at least two occasions, investigators downloaded images of child pornography from Defendant's computer via LimeWire. Even if Defendant does not admit that he knew his shared files were available for other LimeWire users to download, the undisputed facts preponderate that Defendant's offense conduct included the bartering of child pornography. "'Limewire is a file-sharing program that can be downloaded from the internet free of charge; it allows users to search for and share with one another various types of files, including movies and pictures; on the computers of other persons with LimeWire.'" *United States v. Moore*, 572 F.3d 489, 491 (8th Cir. 2009) (quoting *United States v. Ganoe*, 538 F.3d 1117, 1119 (9th Cir. 2008)). In other words, the very purpose of Limewire is to enable a user to share files. It is axiomatic that a person who installs a file-sharing program on a personal computer intends to use that program to share files. Otherwise, there would be no reason to install it.

Further, this court previously held that evidence similar to that in the instant sentencing is sufficient to establish Defendant's intent to distribute and barter child pornography:

> Defendant also intended to traffic in child pornography and distribute child pornography to others by offering his collection of child pornography to the public on the Internet via the LimeWire computer program. Defendant ran LimeWire on his computer and had child pornography in his shared folder. By placing child pornography in his shared folder and by running LimeWire, Defendant intended to barter his images of child pornography in the expectation that he would receive other LimeWire users' images of child pornography. Indeed, Defendant admitted that he used LimeWire to obtain some of his child pornography. Therefore, Defendant intended to traffic in and distribute child pornography.

*United States v. Postel*, 524 F. Supp. 2d 1120, 1125 (N.D. Iowa 2006) (Reade, C.J.)

(internal citation omitted). Defendant admits that others downloaded child pornography from his shared folder via LimeWire. This evidence supports a finding that this enhancement should apply. *See Moore*, 572 F.3d at 491 (holding that defendant's admission that "other individuals downloaded some of the child pornography that he kept on his computer in his 'shared' files by using LimeWire" was sufficient evidence to support the application of the five-level enhancement in §2G2.2(b)(3)(B)). The court finds that the evidence preponderates that Defendant intended to barter and trade child pornography via LimeWire.

Defendant also cites *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007) in support of his argument that "something other than simply installing and running the file-sharing program must be present before the court can apply §2G2.2(b)(3)(B)." Def. Sent. Mem. at 4. *Geiner* discussed *Griffin* and held that USSG §2G2.2(b)(3)(B) does not permit an interpretation as broad as *Griffin*'s. 198 F.3d at 1111. The court shall not engage in any analysis of this argument. Whether or not Defendant agrees with the Eighth Circuit Court of Appeals's interpretation of this enhancement, it is binding on this court. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). More to the point, the evidence shows that Defendant did more than simply install and run LimeWire. Defendant downloaded child pornography using LimeWire and stored child pornography in his shared file. These shared files were accessible to others.

Defendant also argues that, when certain versions of LimeWire fulfill a request to download a shared file, they can bypass certain users of the requested file and seek out "files from the computer with the most power." Def. Sent. Mem. at 4. Defendant claims this demonstrates that a person who has a shared file on LimeWire does not necessarily distribute files. Defendant did not offer any evidence to support this argument. Accordingly, the court shall not consider it.

In light of the foregoing, the court finds that Defendant's offense involved the

distribution of child pornography for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. Therefore, the court shall overrule Defendant's objection to the application of USSG §2G2.2(b)(3)(B).

### b. Application

The court shall apply the **five-level** upward adjustment in §2G2.2(b)(3)(B). This brings Defendant's offense level to **33**.

### 2. Pattern of activity involving sexual abuse or exploitation of a minor

Defendant disputes the application of the **five-level** upward adjustment in §2G2.2(b)(5). This enhancement applies "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). Defendant raises two objections to the application of USSG §2G2.2(b)(5). First, Defendant argues that the court may not simultaneously apply USSG §2G2.2(b)(5) and §4B1.5.[8] Second, Defendant argues that the court may not simultaneously apply USSG §2G2.2(b)(5) and §4B1.5. The court considers both of these arguments, in turn.

### a. Pattern of activity

Defendant argues that the government cannot prove he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. The Guidelines define "pattern of activity involving the sexual abuse or exploitation of a minor" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

---

[8] The court notes that, technically, Defendant did not raise the first objection with the court. However, from the context of Defendant's argument relating to the §4B1.5 enhancement discussed below, Defendant likely intended to raise this objection with respect to both §4B1.5 and §2G2.2(b)(5). Accordingly, the court assumes Defendant is arguing the government cannot prove that he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

USSG §2G2.2 (cmt.) n.1. The conduct considered for a USSG §2G2.2 enhancement "'is broader than the scope of relevant conduct typically considered under §1B1.3.'" *United States v. Ashley*, 342 F.3d 850, 852 (8th Cir. 2003) (quoting U.S. Sentencing Comm'n Guidelines Manual, App'x C, at 373). The enhancement applies "whether or not the abuse or exploitation [. . .] occurred during the course of the offense." USSG §2G2.2 cmt. (n.1). However, "sexual abuse or exploitation of a minor" does not include "possession, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.*

The undisputed portions of the PSIR indicate that Defendant sexually abused A.V. on more than one occasion when she was a minor and produced child pornography featuring A.V. on more than one occasion. This constitutes two or more separate instances of sexual abuse or sexual exploitation and warrants the §2G2.2 enhancement. The court also finds that the statements of A.W., M.W. and B.R. demonstrate that Defendant has also engaged in an extensive pattern of activity involving the sexual abuse of minors. *See* USSG §2G2.2 cmt. (n.1) (defining "pattern of activity involving the sexual abuse or exploitation of a minor" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, *whether or not the abuse or exploitation* [. . .] *resulted in a conviction* for such conduct." (emphasis added)). The statements made by A.W., M.W. and B.R. establish that Defendant sexually abused them. Defendant's abuse of A.W. consisted of him licking her crotch while he was babysitting her. M.W.'s abuse consisted of Defendant repeatedly fondling her genitalia and genital-to-genital contact. B.R.'s abuse consisted of Defendant's repeated fondling of her genitals as well as Defendant's repeated efforts to rape her.

In conclusion, the court finds that the government has satisfied its burden to show that Defendant has engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

### b.      Simultaneous application with §4B1.5

Defendant objects to the simultaneous application of USSG §2G2.2(b)(5) and USSG §4B1.5. Section 4B1.5 provides for an enhancement for being a repeat and dangerous sex offender against minors. Defendant contends the simultaneous application of these sections constitutes impermissible double counting. As the court discusses more fully in Section VII.C, the simultaneous application of these two enhancements does not constitute impermissible double counting. The court may apply both sections simultaneously.

### c.      Application

Accordingly, the court applies the **five-level** enhancement in §2G2.2(b)(5). This brings Defendant's offense level to **38**.

### 3.      Use of a computer

Next, the court considers the application of a two-level upward adjustment pursuant to §2G2.2(b)(6). Section 2G2.2(b)(6) applies "[i]f the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material[.]" USSG §2G2.2(b)(6). Defendant does not dispute that he used a computer in the commission of the offense. Rather, Defendant argues that, if the court applies the five-level upward adjustment in §2G2.2(b)(3)(B) for distribution for a thing of value, which it does, then it should not simultaneously apply the two-level upward adjustment in §2G2.2(b)(6). Defendant argues the application of both of these enhancements would constitute impermissible double counting because both "necessarily require[] the use of a computer." Def. Sent. Mem. at 4.

### a.      Analysis

Defendant cites no authority for his position. Rather, he urges the court to apply a "common-sense interpretation" and find that the application of both sections constitutes double counting. *Id.*

> Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a

> kind of harm that has already been accounted for by application of another part of the Guidelines. Such double counting is permissible where (1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions related to sentencing.

*United States v. Peck*, 496 F.3d 885, 890 (8th Cir. 2007) (internal citations and quotation marks omitted).

The harms these two enhancements address are different. The language of §2G2.2(b)(3)(B) clearly indicates that it is targeted to address the harm created by the "distribution" of child pornography, and distribution is not limited to the transmission of images by computer. *See, e.g.*, *United States v. Clawson*, 408 F.3d 556, 558 (8th Cir. 2005) (finding defendant distributed child pornography to another when another person had immediate knowledge of the existence and location of disks containing child pornography); *Postel*, 524 F. Supp. 2d at 1123 n.3 (noting that "distribution" includes directly displaying images of child pornography to another).

The §2G2.2(b)(6) enhancement is different. This enhancement is intended to address the harm caused by the use of a computer: "[T]he [G]uidelines provide increased punishment for use of the internet in the child pornography trade because the increased efficiency and anonymity make both senders and receivers of this material more dangerous. *United States v. Stulock*, 308 F.3d 922, 925 (8th Cir. 2002) (citing *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001)). Additionally, the Tenth Circuit Court of Appeals has addressed this issue and found that the application of both §2G2.2(b)(3)(B) and §2G2.2(b)(6) does not constitute improper double counting. *See United States v. Miller*, No. 07-8096, 2009 WL 840593, *2 (10th Cir. Apr. 1, 2009) ("Use of a computer does not overlap distribution in exchange for or expectation of a thing of value").

In light of the foregoing, the court finds that it can apply §2G2.2(b)(3)(B) and §2G2.2(b)(6) simultaneously. The court finds the application of §2G2.2(b)(6) is warranted

because the undisputed facts demonstrate that Defendant used a computer in the commission of the offense.

### b. Application

The court applies the **two-level** upward adjustment in §2G2.2(b)(6) because Defendant used a computer to use, possess, transmit, receive and distribute child pornography. This brings Defendant's offense level to **40**.

### 4. Use of 600 or more images

Next, the court turns to consider the application of USSG §2G2.2(b)(7)(D). This section provides for a five-level increase if the offense involved 600 or more images of child pornography.

### a. Analysis

Defendant does not dispute that his offense conduct involved the use of 600 or more images of child pornography. Instead, Defendant argues that §2G2.2(b)(7)(d) is unconstitutional. More specifically, Defendant argues this provision violates the separation of powers doctrine because Congress promulgated it rather than the Sentencing Commission. Defendant claims that, by enacting this provision, "Congress 'cloak[ed] its own work' in the 'neutral colors of judicial action' by commandeering the Sentencing Commission." Def. Sent. Mem. at 5 (quoting *Mistretta v. United States*, 488 U.S. 361, 407 (1989)).

Defendant misapprehends *Mistretta*. *Mistretta* stands for the proposition that a federal judge's participation on the Sentencing Commission does not violate the Constitution. The portion of *Mistretta* to which Defendant cites discusses the propriety of the service of federal judges on the Sentencing Commission:

> We are somewhat more troubled by petitioner's argument that the Judiciary's entanglement in the political work of the Commission undermines public confidence in the disinterestedness of the Judicial Branch. While the problem of individual bias is usually cured through recusal, no such

> mechanism can overcome the appearance of institutional partiality that may arise from judiciary involvement in the making of policy. The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship. That reputation may not be borrowed by the political Branches to cloak their work in the neutral colors of judicial action.

488 U.S. at 407. Then, the Supreme Court held "that the participation of federal judges on the Sentencing Commission does not threaten, either in fact or in appearance, the impartiality of the Judicial Branch." *Id. Mistretta* simply cannot be construed to state that Congress's promulgation of an amendment to a sentencing enhancement violates the separation of powers doctrine. *See Booker*, 543 U.S. at 222 (upholding *Mistretta* and stating: "The fact that the Guidelines are promulgated by the Sentencing Commission, rather than Congress, is constitutionally irrelevant.").

In light of the foregoing, the court finds that §2G2.2(b)(7)(D) does not violate the separation of powers doctrine. The court also finds that Defendant's offense conduct included the distribution of 600 or more images of child pornography.

### b.      Application

The court applies the **five-level** upward adjustment pursuant to USSG §2G2.2(b)(7)(D) because Defendant's conduct involved the use of 600 or more images of child pornography. This brings Defendant's offense level to **45**.

## B.   Acceptance of Responsibility

The government objects to the USPO's recommendation to award Defendant a **two-level** reduction for acceptance of responsibility.[9] Section USSG 3E1.1(a) allows for a two-level reduction when "the defendant *clearly* demonstrates acceptance of responsibility." USSG §3E1.1(a) (emphasis added). Defendant bears the burden to prove, by a

---

[9] In the PSIR, the USPO indicated it was unclear whether Defendant was entitled to a reduction for acceptance of responsibility.

preponderance of the evidence, that he has accepted responsibility. *Peters v. United States*, 464 F.3d 811, 812 (8th Cir. 2006). A district court has broad discretion to determine whether to award a reduction for acceptance of responsibility. *See United States v. Peacock*, 256 F. App'x 9, 11 (8th Cir. 2007) ("A district court's factual determination on whether a defendant has demonstrated acceptance of responsibility is entitled to great deference and should be reversed only if it is so clearly erroneous as to be without foundation.").

### 1. Objection

The government argues against a reduction for acceptance of responsibility due to Defendant's conduct that is associated with the Pro Se Motion (docket no. 28) and the Motion to Withdraw (docket no. 38). A defendant's attempt to withdraw a guilty plea can justify a denial of a reduction under §3E1.1. *See United States v. Gaines*, 187 F. App'x 658, 661 (8th Cir. 2006) (noting that declaring innocence and attempting to withdraw guilty plea "is plainly inconsistent with acceptance of responsibility and could have justified the denial of *any* reduction under USSG §3E1.1") (emphasis in original); *United States v. Smith*, 422 F.3d 715, 727 (8th Cir. 2005) ("[I]n light of his attempts to withdraw his guilty plea, [defendant] was fortunate to receive a two-level reduction for acceptance of responsibility."); *United States v. Newson*, 46 F.3d 730, 734 (8th Cir. 1995) (affirming the denial of an acceptance of responsibility reduction when defendant had attempted to withdraw his guilty plea).

Defendant insists he is entitled to the §3E1.1 reduction. Defendant points out that, in the Pro Se Motion (docket no. 28), he stated: "I have no intention of not cooperating or accepting any responsibility or trying to anger the courts." Pro Se Motion (docket no. 28) at 4. Defendant also argues that he never made a claim of factual innocence when trying to withdraw his guilty pleas. Whether or not these arguments are true, the balance of Defendant's conduct suggests that he is not entitled to the acceptance of responsibility

reduction.

First, Defendant was reluctant to plead guilty. The record reflects that Defendant twice backed out of his plea change hearing before the Magistrate Judge before he actually pled guilty. Then, Defendant sought to withdraw his guilty pleas after the undersigned accepted them.

Second, Defendant made several misrepresentations to the court when trying to withdraw his guilty pleas. In the Pro Se Motion, Defendant argued that he "was technically coer[c]ed by [his] attorney into something that [he] or [his] entire family was not comfortable with." Pro Se Motion (docket no. 28) at 4. In the Motion to Withdraw, Defendant made essentially the same argument, recasting the purported coercion as "failed attempts to communicate to his attorney his desire to withdraw his [guilty] plea." Motion to Withdraw (docket no. 38) at 2-3. As noted in the Second Report and Recommendation, Defendant presented no evidence supporting his claim of coercion. Also, Defendant contended that he had instructed his first attorney to file a motion to withdraw his guilty pleas before the undersigned accepted them. As the Magistrate Judge concluded in the Second Report and Recommendation, there was no evidence in the record to support this contention. These misrepresentations are inconsistent with acceptance of responsibility.

Third, in the Pro Se Motion, Defendant stated that he preferred to go to trial rather than take a plea and that, in light of his family and friends, he "believe[d] it [was his] obligation to do everything in [his] power to be there for them and not in prison." Pro Se Motion at 4. This comment suggests that Defendant is unwilling to accept responsibility.

Finally, the court considers Defendant's allocution. In his allocution, Defendant admitted responsibility for Count 2, Receipt of Child Pornography. However, certain statements in his allocution indicate that he does not feel responsible for Count 1, Sexual Exploitation of a Child. For instance, Defendant stated that there was no evidence to support Ms. Miller's testimony that she observed Defendant and A.V. having intercourse

in their living room. Defendant denied that his conduct had hurt or injured anyone. Defendant also tried to minimize the impact of his photographs of A.V.; Defendant stated that the photographs of A.V. depicting child pornography were taken with A.V.'s permission. However, "[a] minor cannot consent to being sexually exploited." *United States v. Raplinger*, No. 05-CR-49-LRR, 2006 WL 3455266, *11 (N.D. Iowa Nov. 29, 2006), *aff'd*, 555 F.3d 687 (8th Cir. 2009), *cert. denied*, 129 S. Ct. 2814 (U.S. 2009). The court finds that Defendant's allocution is inconsistent with acceptance of responsibility.

### 2. Conclusion

The court concludes that Defendant has failed to show he "*clearly* demonstrates acceptance of responsibility." USSG §3E1.1 (emphasis added). Accordingly, the court declines to apply the two-level reduction for acceptance of responsibility in §3E1.1(a). Defendant's offense level remains at **45**.

### C. Enhancement Under *§4B1.5(b)(1)*

The PSIR recommended that the court apply the enhancement in §4B1.5(b)(1) because Defendant is a repeat and dangerous sex offender against minors. Section 4B1.5(b)(1) provides for an offense level that is "**5** plus the offense level determined under Chapters Two and Three." USSG §4B1.5(b)(1). This enhancement applies "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 [Career Offender] nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG §4B1.5(b).

Defendant objects to this enhancement on two grounds. First, Defendant argues that the government cannot prove that he engaged in a pattern of activity involving prohibited sexual conduct. Second, Defendant objects to the simultaneous application of an upward adjustment under USSG §2G2.2(b)(5) and under §4B1.5(b)(1). The court addresses these arguments, in turn.

### 1. *Pattern of activity involving prohibited sexual conduct*

Defendant argues that he did not engage in a pattern of activity involving prohibited sexual conduct.[10] In conjunction with this objection, Defendant argues that the court should not consider the statements of A.W., M.W. and B.R. in Exhibits 2, 3 and 4, respectively. As the court previously held, these victim statements bear sufficient indicia of reliability. Accordingly, the court considers them in arriving at Defendant's advisory Sentencing Guidelines range.

The advisory Sentencing Guidelines provide the following instructions and definitions for "pattern of activity" and "prohibited sexual conduct":

> (A) [. . .] "[P]rohibited sexual conduct" means [. . .] (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography. It does not include receipt or possession of child pornography. "Child pornography" has the meaning given that term in 18 U.S.C. § 2256(8).

> (B) Determination of Pattern of Activity.—

> (i) [. . .] [T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

> (ii) An occasion of prohibited sexual conduct may be

---

[10] Defendant failed to object to the factual findings in the PSIR that support this enhancement. The court could have deemed this failure to object as an admission of the supporting facts. *See United States v. McCully*, 407 F.3d 931, 933 (8th Cir. 2005) ("[A] fact in the PS[I]R not specifically objected to is admitted for purposes of *Booker*."). However, at the Hearing, the court permitted Defendant to raise this objection despite having failed to properly object.

considered [. . .] without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG §4B1.5, cmt. (n.4) (emphases omitted).

Under the foregoing standards and definitions, Defendant clearly satisfies the criteria for the application of this enhancement.  The undisputed portions of the PSIR and evidence presented at the Hearing prove by a preponderance of the evidence that Defendant sexually abused three children, M.W., B.R. and A.V., and produced child pornography of A.V.[11]  "Producing child pornography and sexually abusing a child is 'prohibited sexual conduct.'"  *Bentley*, 492 F. Supp. 2d at 1060 (citing USSG §4B1.5 cmt. (n.4(A)(ii))).

Defendant argues that he was not eighteen years old at the time he allegedly abused M.W. and B.R. and that the §4B1.5 enhancement therefore should not apply.  Defendant is incorrect.

First, the court notes that Defendant engaged in a substantial amount of abuse after he turned eighteen.  Defendant's date of birth is September 8, 1980.  In her interview, B.R. stated that Defendant abused her while she attended Defendant's mother's day care center.  B.R. attended this day care center during the summer months of 1998 and 1999.  B.R. stated that Defendant abused her multiple times during both summers, though with less frequency in the summer of 1999.  At the time Defendant sexually abused B.R. in the summer of 1999, he was eighteen years old.  The enhancement in §2G2.2(b)(5) therefore applies, since the evidence establishes Defendant sexually abused B.R. on at least two

---

[11] For the reasons stated in footnotes 12 and 13 below, the court does not consider Defendant's abuse of A.W. in its analysis of §4B1.5

occasions during the summer of 1999.[12]  *See* USSG §2G2.2(b)(5) cmt. (stating "pattern of activity involving the sexual abuse or exploitation of a minor" is "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse [. . .] involved the same minor").

Second, the court notes that, although some of Defendant's abuse of M.W. and B.R. occurred before he turned eighteen, the court may consider some of that conduct for purposes of the §4B1.5 enhancement. Defendant abused M.W. and B.R. in Illinois. At the time of the abuse, Illinois law provided that a defendant committed "aggravated criminal sexual abuse" when a defendant "was 17 years of age or over and [. . .] commit[ted] an act of sexual conduct with a victim who was under 13 years of age when the act was committed." Gov. Ex. 6 (docket no. 71-4) (720 Ill. Comp. Stat. 5/12-16(c)(1) (1997)). At the time Defendant abused M.W., M.W. was four years old and Defendant was seventeen years old. At the time Defendant abused B.R., B.R. was ten and eleven years old and Defendant was seventeen and eighteen years old.[13]  In light of the foregoing, the court finds Defendant committed the offense of aggravated sexual abuse under Illinois law with respect to M.W. and B.R. when he was seventeen years old.

This finding is relevant because "prohibited sexual conduct" in USSG §4B1.5 includes acts that violate state law and would have violated federal law had federal jurisdiction existed over the state law offense. USSG §4B1.5 cmt. (n.4(A); 18 U.S.C. § 2426(b)(1)(B). Defendant's aggravated sexual abuse of M.W. and B.R. under Illinois

---

[12] The evidence shows that Defendant sexually abused A.W. in either April or October of 1997. This means Defendant would have been either sixteen or seventeen years old at the time he sexually abused A.W. The evidence shows that Defendant sexually abused M.W. in or about February to August of 1998. At that time, Defendant would have been seventeen years old.

[13] The court does not consider Defendant's abuse of A.W. in this portion of the analysis because it is unclear whether Defendant was sixteen or seventeen years of age at the time he sexually abused A.W.

law would have constituted the federal offense of Aggravated Sexual Abuse had federal jurisdiction existed. *See* 18 U.S.C. § 2241(c) ("Whoever [. . .] in the [. . .] jurisdiction of the United States [. . .] knowingly engages in a sexual act with another person who has not attained the age of 12 years, or knowingly engages in a sexual act [. . .] with another person who has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than the person so engaging), [. . .] shall be [. . .] imprisoned[.]"). Nothing in § 2241(c) limits its coverage to persons over the age of eighteen. Accordingly, the court finds the fact that Defendant was not eighteen years of age at the time he abused M.W. and B.R. is not relevant to the court's application of this enhancement. *See United States v. Phillips*, 431 F.3d 86, 92 (2d Cir. 2005) ("We easily hold [. . .] with respect to [. . .] juvenile conduct [that] Guideline 4B1.5(b) reaches it whether or not it has been adjudicated.").

In conclusion, the court finds that the government has satisfied its burden to show that Defendant engaged in prohibited sexual conduct under USSG §4B1.5(b).

### 2.      *Cumulative to §2G2.2(b)(5)*

Next, Defendant objects to the simultaneous application of §2G2.2(b)(5) and §4B1.5(b)(1). As stated in section VII.A.2, the court applies the **five-level** upward adjustment in §2G2.2(b)(5) because Defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). Defendant argues the court should not apply both enhancements because "[t]he language of both sections is identical," and, "[h]ad the Sentencing Commission intended for a five-level increase to apply to all persons where USSG §2G2.2(b) applies, it would have merely increased the offense level for USSG §2G2.2(b) and not created a new, separate Guideline." Def. Sent. Mem. at 12. Defendant cites no authority in support of his impermissible double counting theory.

"[W]hen one part of the Guidelines is applied to increase a defendant's punishment

on account of a kind of harm that has already been [. . .] accounted for by application of another part of the Guidelines," double counting occurs. *Peck*, 496 F.3d at 890. The court acknowledges that both provisions involve the same pattern of activity. However, this does not constitute *impermissible* double counting, because double counting "is permissible where (1) the Sentencing Commission intended the result and (2) each statutory section concerns conceptually separate notions related to sentencing." *Id.* (internal citations and quotation marks omitted).

First, the court finds the Guidelines demonstrate that the Sentencing Commission intended for these enhancements to apply cumulatively. Section 4B1.5(b)(1) states that it applies in addition to any enhancement in Chapters Two and Three, which includes the §2G2.2(b)(5) enhancement. *See* 4B1.5(b)(1) ("The offense level shall be **5** plus the offense level determined under Chapters 2 and 3.") (emphasis in original). The Commentary to §3D1.5 provides that, in "determin[ing] the total punishment, [. . .] [t]he combined offense level is subject to adjustments from [. . .] Chapter Four, Part B," which includes §4B1.5(b)(1). USSG §3D1.5 cmt. The Sentencing Commission also acknowledged that §4B1.5 was

> similar to the existing five-level pattern of activity enhancement in subsection (b)(4) of §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic) and effectuates the Commission's and Congress's intent to punish severely offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors.

USSG App'x C (Vol. II) amend. 615.

Second, the court finds that these provisions "concern[] conceptually separate notions related to sentencing." *Peck*, 496 F.3d at 890. The §2G2.2(b)(5) enhancement

is a specific offense characteristic for crimes involving child pornography.  In contrast, §4B1.5 was created to address recidivism concerns.  *See* §4B1.5 cmt. ("This guideline applies to offenders whose instant offense of conviction is a sex offense committed against a minor and who present a continuing danger to the public.").  Accordingly, the court finds that the application of these two provisions does not constitute impermissible double counting.

This conclusion is consistent with decisions reached by other courts.  *See, e.g.*, *United States v. Carter*, 292 F. App'x 16, 20 (11th Cir. 2008) (noting district court's "application of [§§] 2G2.2(b)(5) and 4B1.5(b)(1) did not [. . .] involve impermissible double-counting"); *United States v. Schellenberger*, 246 F. App'x 830, 832 (4th Cir. 2007) (noting the Guidelines intended "the cumulative application" of enhancements for a pattern of activity involving the abuse or exploitation of a minor and prohibited sexual conduct under Chapters 2 and 4).

### 3.      *Application*

In light of the foregoing, the court applies the **five-level** enhancement in §4B1.5(b)(1).  This brings Defendant's offense level to **50**.

## VIII.  CRIMINAL HISTORY CATEGORY

The PSIR states Defendant is Criminal History Category **II**.  In arriving at this conclusion, the USPO assessed Defendant with a total of three criminal history category points.  The USPO did not assess Defendant with any criminal history points for Unlawfully Violating an Order of Protection ("Protection Order Violation"), in violation of 720 Ill. Comp. Stat. 5/12-30(a)(1)(i) (2002).  Defendant was convicted of the Protection Order Violation on December 29, 2004 in Jo Daviess County Circuit Court in Illinois ("Illinois Circuit Court"), case no. 2004-CM-38.  The USPO did not assess points for this offense pursuant to USSG §4A1.1(c)(1)(A) because it concluded that the Protection Order Violation "is similar to the offense of Contempt of Court."  PSIR at ¶ 71.

### A. Objection

The government argues the court should assess a criminal history point for the Protection Order Violation. "'Section 4A1.2(c) governs which prior sentences are counted as criminal history points.'" *United States v. Pando*, 545 F.3d 682, 683 (8th Cir. 2008) (quoting *United States v. Postley*, 449 F.3d 831, 832 (8th Cir. 2006)).

> Generally, this section provides that sentences for misdemeanor and petty offenses are counted except that certain offenses, including [contempt of court], and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense.

*Pando*, 545 F.3d at 683 (quoting USSG §4A1.2(c)) (internal quotation marks omitted). It is undisputed that the Illinois Circuit Court imposed a term of probation less than one year in length and no term of imprisonment. Gov't Ex. 1 (docket no. 71-2). The question, then, is whether the Protection Order Violation is "similar" to Contempt of Court under §4A1.2(c)(1).

The Commentary to §4A1.2 guides the court's analysis of whether an unlisted offense is "similar" to a listed offense:

> In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

USSG §4A1.2 cmt. (n.12(A)). The court examines each of these factors, in turn.

### 1.    Comparison of punishments

First, the court compares the punishment between a Protection Order Violation and Contempt of Court.  A court begins its comparison of punishments by examining the definition for each offense as defined by the appropriate jurisdiction, which, in this case, is Illinois.  *United States v. Tomac*, 567 F.3d 383, 386 (8th Cir. 2009).

A Protection Order Violation is a Class A misdemeanor. 720 Ill. Comp. Stat. 5/12-30(d).  A sentence for imprisonment for a Class A misdemeanor must be for a term less than one year in length.  730 Ill. Comp. Stat. 5/5-8-3.  In contrast, the crime of contempt of court does not have a specified punishment.  *See People v. Brown*, 601 N.E.2d 1380, 1384 (Ill. App. Ct. 1992) (noting that punishment for contempt of court is not expressly set forth in any applicable law).  However, the punishment for most criminal contempt proceedings appears to be limited to six months.  *See, e.g.*, *In re Marriage of Betts*, 558 N.E.2d 404, 416 (Ill. App. Ct.1990) ("We speak of 'misdemeanor' criminal conduct because in almost all criminal contempt proceedings, the defendant is not afforded the opportunity for a jury trial, thus limiting his punishment upon a guilty verdict to no more than six months in jail and a comparatively small fine.").

In light of the foregoing, the court concludes that the punishment for a Protection Order Violation is more severe than the punishment for Contempt of Court.

### 2.    Perceived seriousness of the offense

Next, the court considers the perceived seriousness of the offense as indicated by the level of punishment.  USSG §4A1.2 cmt. (n.12(A)).  As stated above, the court concluded the punishment for a Protection Order Violation is more severe than the punishment for Contempt of Court.  Therefore, the court concludes that the perceived seriousness of a Protection Order Violation is greater than the perceived seriousness of Contempt of Court.

### 3. Elements of the offense

Next, the court turns to consider the elements of the offenses. *Id.*

> One commits the offense of violating an order of protection if: (1) he or she commits an act that was prohibited by a trial court in a valid order of protection entered pursuant to the provisions of the Illinois Domestic Violence Act of 1986 [. . .] and (2) such act occurs after the offender has been served notice of the contents of the order or otherwise has acquired knowledge of the contents of the order. The offense of violating an order of protection is not a strict liability offense, and the State is required to prove both *actus reus*, a guilty act, and *mens rea*, a guilty mind.

*People v. Davit*, 851 N.E.2d 924, 927 (Ill. App. Ct. 2006) (internal citations omitted). In contrast, "[t]he elements of [. . .] criminal contempt for the violation of a court order are '(i) the existence of a court order, and (ii) a willful violation of that order.'" *People v. Benson*, 627 N.E.2d 1207, 1210 (Ill. App. Ct. 1994) (quoting *People v. Totten*, 514 N.E.2d 959 (Ill. 1987)).

The elements for these offenses are closely related because both require a defendant to willfully violate a court order. However, the nature of the order that an actor violates distinguishes these offenses. In a Protection Order Violation, a defendant must violate a domestic abuse protective order, while contempt of court does not require a defendant to violate a particular order. This distinction is meaningful. When a defendant violates an Order of Protection, the defendant creates a risk of immediate harm to those protected by the Order of Protection. *People v. Barwicki*, 849 N.E.2d 462, 465 (Ill. App. Ct. 2006) (noting the "purpose of order of protection proceedings is the immediate protection of family or household members"). In contrast, Contempt of Court does not necessarily present any risk of injury to others.

### 4. Level of culpability

Next, the court considers the level of culpability for both offenses. USSG §4A1.2

cmt. (n.12(A)).  The level of culpability is slightly higher for a Protection Order Violation than for Contempt of Court.  As stated above, when a defendant violates an Order of Protection, he or she presents a risk of harm to others.  This factor is not present in Contempt of Court.

### 5. *Likelihood of recidivism*

Lastly, the court considers the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.  The court finds that a Protection Order Violation is more of an indicator of a likelihood of recurring criminal conduct than Contempt of Court.  In order to be subject to an Order of Protection, a defendant must have necessarily put his or her family or household members in imminent risk of harm. Ill. Comp. Stat. 5/12-30(a)(1).  By violating an Order of Protection, the defendant repeats the type of conduct that necessitated the implementation of the Order of Protection in the first instance.  Contempt of court does not present the same situation, since one may be held in contempt of court without having placed others in imminent risk of harm.

### B. *Conclusion*

In light of the foregoing, the court concludes that a Protection Order Violation is not similar to contempt of court for purposes of USSG §4A1.2(c)(1)(A).  Accordingly, the court shall assess **1** criminal history point against Defendant for his conviction for a Protection Order Violation.  As a result of this additional point, Defendant is Criminal History Category **III**.  *Id.* at Ch. 5 Pt. A.

### IX.  *PRE-DEPARTURE ADVISORY SENTENCING GUIDELINES RANGE*

Prior to the application of any upward departure, Defendant is **Criminal History Category III** with a total adjusted offense level of **50**.  However, the Guidelines limit a defendant's total adjusted offense level to a maximum of **43**.  *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (citing USSG Ch. 5, Pt. A, cmt. (n.2)).  His advisory Sentencing Guidelines range is **life**.  *See* USSG Sentencing Table.

## X. UPWARD DEPARTURE

The government suggests that the court could impose an upward departure pursuant to USSG §2G2.2 cmt. (n.4(B)(ii)) because Defendant trafficked video images of child pornography that were substantially more than five minutes in length. Section 5K2.0(a)(1)(B) states that the court may depart from the applicable Guidelines range if the court finds, pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), that "there exists an aggravating circumstance" not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. USSG §5K2.0(a)(1)(B).

In discussing the propriety of Chapter 5 departures generally, the Eighth Circuit Court of Appeals stated:

> Departures are appropriate if the sentencing court finds that there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." USSG §5K2.0. The guidelines provide that sentencing courts [are] to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, a court may consider whether a departure is warranted. USSG §1A1.1, cmt. n.4(b).

*United States v. Chase*, 451 F.3d 474, 482 (8th Cir. 2006) (formatting altered).

The decision whether to depart from the advisory Sentencing Guidelines rests within the sound discretion of the district court. *See, e.g.*, *United States v. Thin Elk*, 321 F.3d 704, 707-08 (8th Cir. 2003) (reviewing for an abuse of discretion "because the decision to depart embodies the traditional exercise of discretion by the sentencing court" (citations and internal quotation marks omitted)). However, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland

of cases[.]" *Koon v. United States*, 518 U.S. 81, 98 (1996). The district court must "carefully articulate the reasons for departure, particularly where the waters are uncharted." *United States v. Reinke*, 283 F.3d 918, 925-26 (8th Cir. 2002).

"The district court is not left adrift [. . .] in determining which cases fall within and which cases fall outside of the 'heartland.'" *United States v. McCart*, 377 F.3d 874, 877 (8th Cir. 2004) (citing *Koon*, 518 U.S. at 94). In USSG §5K2.1, *et seq.*, "[t]he Sentencing Commission enumerated some of the factors that it believed were not adequately accounted for in the formulation of the Guidelines and might merit consideration as aggravating or mitigating circumstances." *Thin Elk*, 321 F.3d at 708 (citing USSG §5K2.0).

The Commentary to §2G2.2 suggests that one aggravating circumstance contemplated by §5K2.0(a)(1)(B) may exist when a defendant traffics video files of child pornography that are substantially longer than five minutes in length. USSG §2G2.2 cmt. (n.4(B)(ii)) ("If the length of the recording is substantially more than 5 minutes, an upward departure may be warranted.").

The undisputed facts show that Defendant trafficked numerous video image files containing child pornography that were substantially more than five minutes in length. Seven video files were between fifteen and thirty minutes in length, two videos were longer than thirty minutes and one was forty-five minutes long. These facts preponderate in favor of a finding that Defendant's conduct included trafficking video images of child pornography that were substantially longer than five minutes. Furthermore, these facts have not previously entered into the court's determination of Defendant's advisory Sentencing Guidelines range. The court finds this case falls outside the "heartland" of child abuse and sexual abuse cases because these lengthy video files on Defendant's laptop underscore his intense fascination with the sexual exploitation of minors.

Accordingly, the court concludes an upward departure would be permissible and

appropriate in the instant sentencing. However, as previously noted, the pre-departure advisory Sentencing Guidelines range is life. For this reason, the court finds it need not depart upward and declines to apply this upward departure. Should the Eighth Circuit Court of Appeals find the court has misapplied the Guidelines such that Defendant's Guidelines sentence is less than life, the court would depart upward to impose a life sentence. The court shall consider its analysis of this departure, however, when deciding the length of Defendant's imprisonment.

## XI. FACTORS IN 18 U.S.C. § 3553(a)

In pertinent part, 18 U.S.C. § 3553(a) directs the court to consider the following factors in determining the particular sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]

(5) any pertinent policy statement [. . .] issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the court need not explicitly set forth its analysis of all the § 3553(a) factors. *See, e.g.*, *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.").

The court considers the § 3553(a) factors and concludes the statutory maximum of 360 months on Count 1 and 240 months on Count 2, for a total of 600 months, is appropriate. For the reasons discussed herein, the court's sentence would be 600 months even if the court erred in interpreting or applying the Guidelines. Defendant's history and characteristics merit a lengthy sentence. Although he is a relatively young man, Defendant has a substantial history of sexually abusing children, namely, A.W., M.W., B.R. and A.V.

Defendant's sexual abuse of children began when he was sixteen or seventeen years old. At that time, he sexually abused A.W., who was nine years old. While Defendant was baby-sitting A.W., he placed her on her bed, took off her underclothes and licked her crotch. A.W. did not discuss this abuse with anyone until she learned that Defendant had also sexually abused her cousin, M.W.

Defendant sexually abused M.W. when she was four years old and he was seventeen

years old.  M.W. attended a day-care run by Defendant's mother, Jolene Spahn Bastian. Ms. Bastian sometimes left Defendant in charge of the children who attended her day care. When Ms. Bastian was out of earshot or absent, Defendant fondled M.W.'s genitals. M.W. stated that the fondling occurred nearly every day she attended the day care.  On one occasion, Defendant rubbed his penis against M.W.'s genitals.  Defendant threatened M.W. and told her not to tell Ms. Bastian about the abuse.  On one occasion, Defendant brandished a knife at M.W.

Defendant sexually abused B.R., who also attended Ms. Bastian's day care.  This abuse occurred when B.R. was eleven and twelve years old and Defendant was seventeen and eighteen years old.  B.R. recounted that, each day she attended the day care, Defendant sexually abused her.  Specifically, Defendant fondled B.R.'s genitals, made B.R. touch his genitals and physically forced B.R. to perform oral sex on him.  B.R. recalled two instances in which Defendant tried to rape her.  On one occasion, Defendant was babysitting B.R. at her home and tried to insert his penis into B.R.'s vagina.  On another occasion, Defendant lured B.R. to an outbuilding on the day care property by promising her a popsicle.  Once inside the outbuilding, Defendant placed B.R. on a table, removed her underwear and tried to insert his penis into her vagina.  After Defendant realized he was unable to do so, he directed his younger, brother, C.B., a minor, to try to do the same.  C.B. was also unable to insert his penis into B.R.'s vagina.  B.R. also recalled that Defendant would lure her into the kitchen to sexually abuse her by telling B.R. that someone from B.R.'s family wanted to talk to her on the kitchen telephone.  B.R. also recalled that, on one occasion, Defendant hid in a shower in a bathroom so he could ambush B.R. and sexually abuse her when she used the bathroom.

Defendant's sexual abuse continued as he aged.  When he was twenty-one, he sexually abused A.V., who was thirteen years old.  Defendant also exploited A.V. by producing pornographic images of her and distributing those images on the Internet when

she was seventeen years old.

Defendant's cache of child pornography also demonstrates his strong interest in sexually abusing minors. In addition to producing and distributing child pornography of his own, Defendant downloaded numerous images of child pornography on his personal computer. Some of these child pornography images depicted minors who were tied and bound or otherwise treated violently. And, as mentioned above, Defendant had many video files of child pornography that were substantially more than five minutes in length. Clearly, Defendant's history and characteristics demonstrate that he has a sexual interest in children and that he has a substantial preoccupation with sexually abusing minors.

The court also finds that a long term of imprisonment is necessary to protect the public from further crimes by Defendant. Defendant's offense conduct shows that he is a predator of children. Defendant took advantage of child care positions to abuse children. For the most part, Defendant was careful to sexually abuse children under circumstances that would help him avoid detection, such as times when he was supervising children while his mother was not present or while baby-sitting children at their home while their parents were absent. Defendant also tried to recruit another, his younger brother, to sexually abuse B.R. The court also notes that Defendant's sexual abuse of minors was escalating in intensity. At the outset of his abuse of A.W., Defendant's abuse was an isolated incident. By the time he had reached the age of twenty-four, he was engaging in intercourse with a minor and producing and distributing pornographic images of that minor. Defendant's allocution suggests that he does not feel that he caused A.V. any harm by producing images of child pornography featuring her because she consented to this conduct. The fact that Defendant fails to understand the harm he caused to minors by sexually exploiting them demonstrates that a lengthy sentence is necessary to protect other minors from Defendant's conduct.

The court also finds a lengthy sentence is necessary to reflect the seriousness of

Defendant's offense conduct and provide just punishment for that conduct. By making and distributing child pornography featuring A.V., Defendant has positioned A.V. to be victimized many times over by others who seek images of child pornography. The lasting effect of exploiting children in this manner is reflected in the victim impact statements supplied to the USPO. In the victim impact statements, a number of victims of the child pornography found in Defendant's possession comment on the devastating impact this crime has had on the victims' lives and interpersonal relationships. Clearly, the impact of Defendant's conduct has far-reaching implications. Because Defendant does not admit his criminal conduct, he is not a favorable candidate for treatment and certainly not treatment in the community. The court finds a substantially lengthy sentence will adequately reflect the seriousness of Defendant's offense, promote respect for the law and provide just punishment.

## XII. DISPOSITION

After all applicable adjustments and departures, the court finds Defendant's final advisory Sentencing Guidelines range is **life.** After considering all of the § 3553(a) factors, the court finds a **sentence of a term of 360 months of imprisonment** is appropriate on Count 1 and **240 months of imprisonment** is appropriate on Count 2. Thus, the total sentence is 600 months. The sentences are to be served consecutively. The court shall impose this sentence on Defendant when the hearing resumes on September 1, 2009 at 3:00 p.m.

**IT IS SO ORDERED.**

**DATED** this 20th day of August, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA